UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-81408-CIV-MARRA

PAUL A. LOBEL AND LAURA ANNE LOBEL,
individuals,

Plaintiffs,

vs.

THE GENESIS GROUP INTERNATIONAL, INC.,
CONCIERGE WELLNESS, INC., and
JUDD FUHR, MD, DC, an individual,

Defendants.
_____/

**OPINION AND ORDER**

This cause is before the Court upon Defendants Concierge Wellness, Inc. and Judd A. Fuhr, MD, DC's Motion to Dismiss (DE 15); Plaintiffs Paul A. Lobel and Laura Anne Lobel's Cross-Motion for Leave to File an Amended Complaint (DE 18) and Plaintiffs' Motion for Leave to File a Sur-Reply (DE 26). The Court has carefully considered the motions and is otherwise fully advised in the premises.

I.  Background

Plaintiffs Paul A. Lobel and Laura Anne Lobel ("Plaintiffs") bring this two-count Complaint for breach of contract (count one) against Defendant The Genesis Group International, Inc.[1] ("TGGI") and for conversion against Defendants Concierge Wellness, Inc. ("CW") and Judd Fuhr, MD, DC ("J. Fuhr") (collectively, "Defendants"). (Compl., DE 1.)  The Complaint alleges the following:

---

[1] Default judgment was entered against TGGI on February 22, 2013. (DE 23.)

Plaintiffs loaned TGGI, whose principal place of business is in Florida, $57,000.00 on December 1, 2003.  (Compl. ¶ 7, introductory paragraph; promissory note, DE 1-5.)  The promissory note was secured by a pledge of shares of stock in TGGI.  (Pledge document, DE 1-7.)  Upon default of the debt or breach of the agreement, Plaintiffs had the right to foreclose on the pledged shares and exercise their rights as secured parties. (Pledge document.)  The promissory note was extended by mutual agreement until January 1, 2009.  (Compl. ¶ 7; extension of note, DE 1-6.)  The note is in default and has accrued principal and interest at a rate of 10.25% in excess of $75,000.00.  The note provided for application of Florida law. (Compl. ¶ 10.)

"Upon information and belief," J. Fuhr knew that his father, Allan Fuhr ("A. Fuhr"), controlled TGGI and that TGGI had become insolvent. (Compl. ¶¶ 6, 12.)  J. Fuhr also knew that Plaintiffs had loaned money to TGGI and that the promissory note had not been paid by TGGI.  J. Fuhr accepted the conveyance of the United States registered trademark "Sinusave" and all intellectual property rights and goodwill attached thereto from TGGI without paying equivalent consideration, thereby "converting what rightfully was an asset of TGGI . . . that could have been used to satisfy all or part of the monies owed by TGGI to Plaintiffs." (Compl. ¶ 12.)  The "wherefore" section of the Complaint seeks a judgment for conversion against CW as well.

Defendants move to dismiss for lack of personal jurisdiction.  In making that argument, they state that the Complaint fails to allege facts establishing jurisdiction pursuant to the Florida long arm statute. They also state that they have no minimum contacts with Florida with respect to the alleged conversion of the trademark because all negotiations took place outside of Florida. In addition, Defendants contend that the conversion claim should be dismissed for failure to state a

claim. Plaintiffs respond that because Defendants have committed the tortious act of conversion, there is personal jurisdiction under the Florida long-arm statute. They also allege general personal jurisdiction over Defendants. Finally, they claim the conversion claim is properly alleged.

## II. Jurisdictional Evidence

### A. Plaintiffs' Complaint

With respect to jurisdiction, the Complaint states the Court has jurisdiction over TGGI based on either general jurisdiction or, alternatively, from conducting business in this state. (Compl. ¶ 3.) The Complaint does not provide a jurisdictional basis over CW and J. Fuhr. The Complaint does state that "[u]pon information and belief," CW is a Missouri corporation and J. Fuhr is the president, owner and chief medical officer of CW. (Compl. ¶ 6.) Attached to the Complaint is a document indicating that the trademark assignment from TGGI to CW was filed by a Florida attorney. (Trademark assignment, DE 1-8.)

### B. Defendants' Initial Evidence

CW is a Missouri corporation formed in 2007. (J. Furh Aff. I ¶ 7, DE 15-1.) Its business office is located in St. Louis, Missouri and it regularly transacts business in the states of Missouri and Kansas. (J. Fuhr Aff. I ¶¶ 9-10.) CW does not transact business in Florida and does not maintain any offices in Florida. (J. Fuhr Aff. I ¶¶ 11, 14.) CW neither owns real property in Florida nor does it maintain any bank accounts in Florida. (J. Fuhr Aff. I ¶¶ 12-13.) J. Fuhr is the sole shareholder of CW. (J. Fuhr Aff. I ¶ 6.)

J. Fuhr has been a resident of St. Louis, Missouri since 2004. (J. Fuhr Aff. I ¶ 2.) He does not own real property in Florida, does not maintain any bank accounts in Florida and does not

conduct any business in Florida. (J. Fuhr Aff. I ¶ 9.)  Neither J. Fuhr nor CW own, or have owned, an interest in TGGI and they are not indebted to Plaintiffs under the promissory note at-issue. (J. Fuhr Aff. I ¶ 17.)  CW is the sole owner of the SINUSAVE trademark. (J. Fuhr Aff. I ¶ 20.)  CW has never used the trademark in Florida or any other state. (J. Fuhr Aff. I ¶ 15.)  CW accepted the trademark in Missouri, not Florida. (J. Fuhr Aff. I ¶ 21.)

C.  Plaintiffs' Rebuttal Evidence

Plaintiffs submit the following documents:

1) A document indicating that A. Fuhr registered the domain name SINUSAVE.COM and that it was "updated" on May 26, 2011. (Whois Registry, DE 17-1.)

2) A page from a website, SINUSAVE.COM, which indicates there were "33 captures" from April 3, 2004 through February 2, 2011. (Internet Archive Record of Sinusave.com, DE 17-2.)

3) A page from a website, Worldchiroexpo.com, which identifies J. Fuhr as its "chief operating officer." (Worldchiroexpo.com Internet Page, DE 17-3.)

4)  The articles of incorporation for World Chiro Expo, Inc. which states it is Florida corporation and lists A. Fuhr as director of the corporation. (World Chiro Expo, Inc.'s Articles of Incorporation, DE 17-4.)

5) A webpage indicating that the SINUSAVE.COM website redirects users to a website for "worlddentalexpo.com" (Worlddentaexpo.com Webpage, DE 17-7.)

6)  The articles of incorporation for World Dental Expo, Inc. which states it is Florida corporation and lists A. Fuhr as director of the corporation. (World Dental Expo, Inc.'s Articles of Incorporation, DE 17-5.)

7) The articles of incorporation for Global Healthcare Expo, Inc. which states its principal office is in Boca Raton, Florida and lists A. Fuhr as manager. (Global Healthcare Expo, LLC's Articles of Incorporation, DE 17-6.)

D.  Defendants' Rebuttal Evidence

TGGI retained and compensated the attorney who prepared and filed the trademark assignment of SINUSAVE. (A. Fuhr Aff. ¶ 3, DE 25-1; J. Fuhr Aff. II ¶ 5, DE 25-2.)  Neither CW nor J. Fuhr participated in any discussions regarding the assignment of the trademark from TGGI in Florida. J. Fuhr did participate in discussions regarding the assignment while in Missouri. (J. Fuhr Aff. II ¶ 7.)  Neither CW nor J. Fuhr advertised the SINUSAVE product or brand through websites or other media. (J. Fuhr Aff. II ¶ 11.)  The SINUSAVE product has not been in production or sale since May of 2007.  (A. Fuhr Aff. ¶ 13.)  The SINUSAVE domain name has been owned by A. Fuhr since 2003. (A. Fuhr Aff. ¶ 5.)  Websites, advertisements or domain names regarding SINISAVE found on the internet today are the product of TGGI's prior marketing of the SINUSAVE product.  TGGI neglected to insure those websites and advertisements were taken off the internet when TGGI stopped production and sale of SINUSAVE. (A. Fuhr Aff. ¶ 9.)

World Dental Expo, Inc. is a Florida corporation owned by Global Healthcare Expo, LLC. (J. Fuhr Aff. II ¶ 20.)  Global Healthcare Expo, LLC is a Florida limited liability company partially owned and operated by A. Fuhr. (A. Fuhr Aff. ¶ 10; J. Fuhr Aff. II ¶ 12.)  Neither J. Fuhr nor CW own or operate Global Healthcare Expo, LLC.  (A. Fuhr Aff. ¶ 11; J. Fuhr Aff. II ¶ 13.)  Neither CW nor J. Fuhr own or control the World Dental Expo, Inc website. (J. Fuhr Aff. II ¶ 22.)  Neither CW nor J. Fuhr have control or ownership of World Chiro Expo, Inc. (A. Fuhr

Aff. ¶ 17; J. Fuhr Aff. II ¶ ¶17-18.)  Despite his title on the World Chiro Expo website, J. Fuhr agreed to be on the website simply as an accommodation to his father because J. Fuhr is an expert in chiropractic medicine. (J. Fuhr Aff. II ¶ 16.)

    E.  Plaintiffs' Sur-Rebuttal Evidence

Plaintiffs received a May 5, 2008 email from A. Fuhr stating that with respect to TGGI, there has been "one small order over the past two weeks." (May 5, 2008 email, DE 26-3.)  There is an April 21, 2009 document indicating that a Florida attorney filed a document stating that the SINUSAVE mark has been in continuous use for the past five years. (Declaration of Use, DE 26-5.)  CW was administratively dissolved on April 1, 2009 and told it could not conduct any business except that necessary to wind up and liquidate. (Administrative Dissolution, DE 26-8.)  On July 29, 2009, IP Genesis LLC conveyed a patent to CW. (Patent Assignment, DE 26-6.)  J. Fuhr filed an application for reinstatement of the corporation CW in Missouri on December 6, 2009. (Reinstatement Application, DE 26-9.)  A screenshot of a webpage from SINUSAVE.COM redirects to worlddentalexpo.com/sinusave. (Screenshot, DE 26-11.)

    III. Legal Standard

The plaintiff's burden in alleging personal jurisdiction requires that the plaintiff establish a prima facie case of personal jurisdiction over a nonresident defendant.  A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict. The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits.  If by defendant's affidavits or other competent evidence, defendant sustains the burden of challenging plaintiff's allegations, the plaintiff must substantiate the jurisdictional allegations in the complaint by affidavits, testimony or documents.

However, where the evidence conflicts, the district court must construe all reasonable inferences in favor of the plaintiff. See Future Tech. Today, Inc., v. OSF Healthcare Sys., 218 F.3d 1247, 1249 (11th Cir. 2000); Robinson v. Giarmarco & Bill, P.C., , 74 F.3d 253, 255 (11th Cir. 1996) (citing Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990)); Exhibit Icons, LLC v. XP Cos., LLC, 609 F. Supp. 2d 1282, 1291-92 (S.D. Fla. 2009).

Rule 8(a) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." Fed. R. Civ. P. 8(a). The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quotations and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950. When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true in determining whether a plaintiff has stated a claim for which relief could be granted. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

IV.  Discussion

Plaintiffs have alleged two possible bases for asserting personal jurisdiction over J. Fuhr and CW: (1) Defendants have committed the tort of conversion (Pl. Resp. at 5) and (2) Defendants are subject to general personal jurisdiction (Pl. Resp. at 8).[2]

The Court will first address Plaintiffs' claim that the tort of conversion provides personal jurisdiction pursuant to the Florida long-arm statute.  Florida Statutes § 48.193(1)(b). Conversion is a tort that can establish personal jurisdiction over a defendant in Florida.  Future Tech., 218 F.3d at 1250; Russo v. Fink, 87 So. 3d 815, 818 (Fla. Dist. Ct. App. 2012); Joseph v. Chanin, 869 So. 2d 738, 740 (Fla. Dist. Ct. App. 2004); Merkin v. PCA Health Plans of Florida, Inc., 855 So. 2d 137, 140 (Fla. Dist. Ct. App. 2003).  That stated, there can be no personal jurisdiction if the tort claim is not properly alleged.  Wendt v. Horowitz, 822 So. 2d 1252, 1260 (Fla. 2002) ("[W]here the threshold question of personal jurisdiction turns on whether a tort is committed in Florida, the court necessarily must review the allegations of the complaint to determine if a cause of action is stated."); Luigino's International, Inc. v. Miller International Foods, Inc., No. 6:07-cv-769-Orl-31KRS, 2007 WL 1576363, at * 2 (M.D. Fla. May 30, 2007) (same).  As shown infra, Plaintiffs have not properly alleged a claim for conversion, thus there

---

[2] Significantly, Plaintiffs failed to allege any grounds to assert personal jurisdiction over J. Fuhr and CW in the Complaint.  That, in and of itself, is reason to grant the motion to dismiss for lack of personal jurisdiction.  See Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1257 (11th Cir. 2010) ("A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.") (quoting United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (11th Cir.2009)).  For the purpose of having a complete record, however, the Court will discuss the two grounds identified by Plaintiffs in their response memorandum.

can be no personal jurisdiction based on this tort.³

Next, the Court will address whether Plaintiffs have established general personal jurisdiction over Defendants. In order for a court to exercise general jurisdiction in Florida, the contacts must be especially pervasive and substantial to satisfy section two of the Florida long-arm statute 48.193. General Cigar Holdings, Inc. v. Altadis S.A., 205 F. Supp. 2d 1335, 1343 (S.D. Fla. 2002); see Florida Statutes.§ 48.193(2). The general jurisdiction provision of the statute states:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Id. General jurisdiction arises from a defendant's contacts with Florida that are not directly related to the cause of action being litigated and connexity between a defendant's activities and the cause of action is not required. Consolidated Dev. Corp. v. Sherritt, Inc., 216 F.3d 1286, 1292 (11th Cir. 2000). The "substantial and not isolated activity" requirement of the long-arm statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment Due Process Clause as discussed in Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 413-416 (1984); see Woods v. Nova Cos. Belize, Ltd., 739 So.2d 617, 620 (Fla. Dist. Ct. App. 1999); Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So.2d 716, 720 (Fla. Dist. Ct. App.

---

³ Based on this finding, there is no reason to examine whether Plaintiffs have alleged that sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment and whether maintenance of the suit offends "traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945); Venetian Salami Co. v. Parthenais, 554 So.2d 499, 502 (Fla. 1989).

1998).  A finding that a defendant's activities satisfy section 48.193(2)'s requirements also necessitates a finding that minimum contacts exist.  See Universal Carribean Estab. v. Bard, 543 So.2d 447, 448 (Fla. Dist. Ct. App. 1989).  Therefore, the analysis of jurisdiction under section 48.193(2) and the Due Process clause merge.

As there is no requirement of a connection between the defendant's activities and the cause of action, the Due Process requirements are much more stringent for general personal jurisdiction than for specific personal jurisdiction.  Due Process requires a showing of substantial, persistent, continuous, and systematic business contacts between the defendant and the forum state.  Helicopteros, 446 U.S. at 414 nn.8, 9; Ruiz de Molina v. Merritt & Furman Ins. Agency, Inc., 207 F.3d 1351, 1357 n.4 (11th Cir. 2000);  Meier v. Sun International Hotels, Ltd., 288 F.3d 1264, 1274 (11th Cir. 2002); Borg-Warner Acceptance Corp. v. Lovett & Tharpe, Inc., 786 F.2d 1055, 1057 (11th Cir. 1986).  "The substantial connection between a defendant and the forum state must come about by an action of the defendant purposefully directed toward the forum state."  Nida Corp. v. Nida, 118 F. Supp. 2d 1223, 1229 (M.D. Fla. 2000) (citing Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cty., 480 U.S. 102, 108-09 (1987)).  The defendant's contacts "must be so extensive to be tantamount to [a defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in [the forum state's courts] in any litigation arising out of any transaction or occurrence taking place anywhere in the world."  Baker v. Carnival Corp., No. 06-21527-CIV-HUCK, 2006 WL 3360418, at * 2 (S.D. Fla. Nov. 20, 2006) (citing Purdue Research Foundation v. Sanofi Synthelabo, S.A., 338 F.3d 773, 787 (7th Cir. 2003)).

Here, the only evidence produced by Plaintiffs that link these Defendants to Florida is a

10

page from the website for World Chiro Expo, Inc. that identifies J. Fuhr as the "chief operating officer" of World Chiro Expo, Inc.[4]  Hence, the record is devoid on any evidence that CW has any contacts with the State of Florida.  As to J. Fuhr, he attested in his affidavit that he has no ownership interest in World Chiro Expo, Inc., he does not own real property in Florida, he does not maintain bank accounts in Florida and he does not conduct any business in Florida.  Plaintiffs have not presented any evidence to rebut J. Furh testimony.  A person may be the chief operating officer of a Florida corporation and never personally engage in any business activities in this state.  Simply put, an out-of -state defendant, with no other contacts other than the title of "chief operating officer" of a Florida corporation, cannot be found to have established substantial, persistent, continuous, and systematic business contacts in Florida.  Indeed, Plaintiffs have provided nothing that shows any other contacts with Florida stemming from J. Fuhr's capacity as chief operating officer.

The facts of the instant case are in stark contrast to Autonation, Inc. v. Whitlock, 276 F. Supp. 2d 1258 (S.D. Fla. 2003).  There, the court addressed whether a Texas resident who had previously worked for the plaintiff in Florida could be found to meet the requirements for general personal jurisdiction.  After the plaintiff transferred the defendant from Florida in 1998, the defendant became the general manager for the plaintiff in Georgia before moving to Texas. Id. at 1261.  Between 1998 and 2003, the defendant attended six business meetings in Florida, had ongoing contacts with the Florida plaintiff via communications of customer complaints and

---

[4] The Court notes that J. Fuhr denies that he actually holds this position and claims he has simply allowed himself to be on the website as an "accommodation" to his father.  The Court will, however, view the facts in the light most favorable to Plaintiffs and accept for purposes of this motion that J. Fuhr holds the title of chief operating officer of World Chiro Expo.

engaged in the transmission of business information in the form of bulletins, books, posters, notices, reports and the transmission of business systems and polices. Id. at 1263.  Based on these acts, the court found that the defendant collectively had enough activities to assert personal jurisdiction over him.  Id. (citing Nordmark Presentations, Inc. v. Harman, 557 So.2d 649, 651 (Fla. Dist. Ct. App. 1990) (finding personal jurisdiction over the nonresident defendant based upon the defendant's attendance at three business meetings in Florida, as well as the defendant's receipt of information and direction regarding the defendant's work over two year period)).  Plaintiff has not presented any evidence of J. Fuhr's activities in the State of Florida approaching the requisite standard.

     Next, the Court will address the conversion claim. Conversion is an act of dominion wrongfully asserted over another's property which is inconsistent with the right of the owner and deprives the owner of the right of possession. Warshall v. Price, 629 So.2d 903, 904 (Fla. Dist. Ct. App. 1993); City of Cars, Inc. v. Simms, 526 So. 2d 119, 120 (Fla. Dist. Ct. App. 1988); United American Bank of Central Florida, Inc. v. Seligman, 599 So. 2d 1014, 1016 (Fla. Dist. Ct. App. 1992). In order to recover for conversion, the plaintiff must demonstrate a right to property. It may also be demonstrated by a demand for the return of that property and the defendants' refusal to return the property.  Mayo v. Allen, 973 So. 2d 1257, 1259 (Fla. Dist. Ct. App. 2008); Goodwich v. Malowney, 157 So. 2d 829, 832 (Fla. Dist. Ct. App. 1963).

     Here, Plaintiffs have failed to demonstrate a right to the trademark.  Based on the allegations of the Complaint, at the time the trademark was transferred, TGGI, and not Plaintiffs, was the owner of the trademark and TGGI voluntarily transferred the trademark to CW.  Plaintiffs, however, point to their security interest in the shares of TGGI.   Even assuming

Plaintiffs have this security interest, it does not establish that they are owners of TGGI and therefore owners of the trademark.  Instead, Plaintiffs had a right to enforce that security interest in the shares of TGGI, which was the collateral, not the trademark, which was not the collateral and therefore not subject to the security interest.  See Seaman v. Clearwater Oaks Bank, 469 So. 2d 246, 247 (Fla. Dist. Ct. App. 1985) ("conversion is appropriate remedy for a secured party to bring against a third party when its *collateral* has been disposed of by the debtor") (emphasis added).  Based on the facts alleged, Plaintiffs did not have a right to the trademark, an asset of the corporation.  Because a claim for conversion requires that the plaintiff have a right to the property, and the Complaint does not establish this right, the conversion claim fails as a matter of law.[5]  Since Plaintiff has failed to state a claim for a tort committed in Florida by Defendants, there is no basis for the exercise of personal jurisdiction over them under Florida's long arm statute.  Furthermore, based on the evidence adduced during discovery, the Court finds that amendment of the conversion claim would be futile.[6]

V.  Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

1) Defendants' Motion to Dismiss (DE 15) is **GRANTED**.  This Complaint is dismissed without prejudice based on the lack of personal jurisdiction.

---

[5] Plaintiffs cite to F.D.I.C. v. Kerr, 637 F. Supp. 828 (W.D.N.C. 1986), which the Court finds unpersuasive.  That was not a conversion case.  The FDIC brought claims based in the federal securities laws and RICO.  Plaintiffs' reliance on Cannon v. Parker, 152 F.2d 706 (5th Cir. 1945) is equally misplaced, as it too is not a conversion case. (DE 26 at 3.)

[6] At best, Plaintiffs have a fraudulent transfer claim.  The record evidence, however, shows that any actions taken by Defendants relative to their acceptance of the assignment of the trademark occurred in Missouri, not Florida. J. Fuhr. Aff. I, ¶ 21; J. Fuhr Aff. II, ¶ 7. Thus, these Defendants also would not be subject to a fraudulent transfer claim in Florida.

2) Plaintiffs' Cross-Motion for Leave to File an Amended Complaint (DE 18) is

**DENIED.**

3) Plaintiffs' Motion for Leave to File a Sur-Reply (DE 26) is **GRANTED.**

4) The Court will separately issue judgment for Defendants.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 29th day of April, 2013.

_____
KENNETH A. MARRA
United States District Judge